# Allgood *v.* Bank of Piedmont.

## *Bill of Review.*

1. *Bill of review; by whom maintained.*—A bill of review can be maintained only by parties who have an interest affected by the decree in the original suit, and who were injured by the errors complained of, whatever may have been their right to insist upon such errors at the original hearing.

2. *Same: on ground of newly discovered evidence.*—To sustain a bill of review on the ground of newly·discovered evidence, it must not only appear that the additional evidence was not known at the time of the former hearing and could not have been ascertained by the exercise of proper diligence, but the newly discovered evidence, with the other evidence already in the case, must entitle the complainant to a decree different from and more beneficial to the complainant in the bill of review than the one rendered in the original case.

3. *Same; same; case at bar.*—In a bill of review, it was averred that the original suit was instituted to enforce a vendor's lien evidenced by notes, alleged to have been the property of the complainant therein, and which were in possession of

[Allgood v. Bank of Piedmont.]

the complainant and introduced in evidence by him, and that although said notes were executed by the complainant in the bill of review, they were the property of another party than the complainant in the original suit, and that this fact was discovered after the decree sought to be reviewed was rendered, and could not have been ascertained by reasonable diligence previous to the rendition of said decree, and that, therefore, the complainant in said original suit was not entitled to maintain said bill. *Held*: that upon such averments a bill of review could not be maintained; it not appearing that the complainant therein was entitled to a decree which was beneficially different from that rendered in the original case.

4. *Same; same; proper prayer in such bill.*—In a bill of review on the ground of newly discovered evidence, a prayer that the complainant be "placed in the same situation he would be had said bill not been filed against him," is improper. The proper prayer in such a case is that the decree in the original case be reversed, and that the complainant in the bill of review be allowed to re-try the case on the original record and upon the original and newly discovered evidence.

APPEAL from the Chancery Court of Calhoun.

Heard before the Hon. RICHARD B. KELLY.

Bill of review on the ground of newly dicovered evidence, filed by J. P. Allgood, the appellant, against the Bank of Piedmont, and others.

On the 15th of August, 1895, The Bank of Piedmont filed its bill in the chancery court of Calhoun county, for the purpose of enforcing a vendor's lien on certain lots situated in the town of Piedmont. In this bill, as averred in the bill of review, the notes given for the property were payable to the Piedmont Land and Improvement Company, or order, at its office in Piedmont, and were indorsed, "Piedmont Land & Improvement Co., by J. H. Ledbetter, V. P.;" that the complainant in said original bill—the Bank of Piedmont— averred in its said bill, that said notes were its property, and introduced them in evidence upon the submission of the cause. It was then averred, "that without any fault, or negligence on complainant's part, he was, by the averments in said [original bill], 'that said notes are the property of orator,' [the said Bank of Piedmont] together with the fact that the complainant in said bill [The Bank

[Allgood v. Bank of Piedmont.]

of Piedmont] produced and introduced them in evidence on the trial of said cause,—falsely led to believe, that said notes were the property of said complainant, and that it had the right to sue on them, and for that reason, did not challenge or deny its right to do so."

On the pleadings and proof in said cause, the chancellor, on the 21st October, 1896, rendered a final decree, declaring that complainant had a vendor's lien on the lots mentioned in the bill for the purchase money; and ascertaining that the amount due on said purchase money notes at that date was $885.92, ordered that, in default of the payment of that sum by the defendant, J. P. Allgood, by a day named the register should proceed to sell the lots mentioned, in the manner directed by said decree. It is averred in the present bill, that the register in pursuance of said decree, sold said lots, on the 15th December, 1896, and they were purchased by one R. J. Riddle, for $10, and the register executed a deed to him to said lots, which said sale and purchase was by him reported to and confirmed by the court, on the 25th May, 1897; at which term of the court, on motion of complainant in said bill, a decree over for $896.72, was rendered by the court against the defendant, Allgood, and execution was ordered to issue for the collection of the same. Said notes were, each, dated January 6th, 1890.

It is then averred in the bill for review, "since the rendition of said decrees of October 21st, 1896, and May 25th, 1897, your orator has discovered new matter of consequence and material in said cause, particularly, that prior to the filing of said bill, on the 15th August, 1895, said notes, upon which it was filed and said suit predicated, were sold by the said Piedmont Land & Improvement Co. to said R. J. Riddle and were delivered to him and indorsed in blank as hereinbefore shown; that in January, 1895, said Riddle sold and delivered them so indorsed to the said Bank of Piedmont; that said Bank of Piedmont then transferred, assigned and delivered said notes indorsed as aforesaid, to said Riddle, to hold as collateral security, to secure an indebtedness of $4,850, from said bank to the Iron

Belt & Mercantile Company, a corporation; that the debt of said bank to said Mercantile Co. had not been paid and was still outstanding, the said Mercantile Co. had not released its claim on said notes or to either of them, and had not transferred or assigned them back to said bank, but still claimed them as collateral security for the said indebtedness of said bank to it, when said bill was filed, all of which said Riddle was cognizant of, and of which said bank was fully cognizant, when said bill was filed and said decrees were rendered, and said lots were sold and purchased by said Riddle as aforesaid; and which said new matter your orator did not know and could not by reasonable diligence have known to make use thereof in the said cause, previous to, and at the time of the hearing and the procuring of said decrees; and your orator first learned of the existence of said newly discovered evidence about the middle of November, 1898, and your orator is advised, that said new matter would have been operative and effective had it been introduced as evidence upon the trial of said cause, to prevent the rendition of said decrees of October 21st and May 25th, 1897, or either of them." It is further averred in substance, that said notes were not the property of the complainant in said bill as alleged therein, and it had no right to maintain said bill; that its representation of itself as being the owner of said notes and its prosecution of said suit was a fraud on complainant in the bill of review, and enable said bank to obtain said decrees and have said lots sold. On these grounds he seeks to have said original suit reviewed, the decrees therein reversed and set aside, and the sale of said lots annulled, and the deed to Riddle cancelled, and complainant "placed in the same situation as he would be, had said bill not been filed against him." The Bank of Piedmont, the Piedmont Land & Improvement Company and R. J. Riddle alone are made parties respondent.

The chancellor rendered a decree denying the relief sought and dismissing the bill. From this decree the complainant appeals, and assigns the rendition thereof as error.

[Allgood v. Bank of Piedmont.]

MATTHEWS & WHITESIDE, for appellant.—The facts alleged in the bill of review show that the decrees in the original cause were erroneous, or would have been erroneous if the facts alleged as newly discovered evidence had been before the court in the shape of legal evidence at the time of rendering said decrees. The Iron Belt Mercantile Company was a necessary party to the original bill. It is a settled rule that when a suit in equity can not be disposed of properly on the merits, without the presence of absent parties, objection may be made at the hearing, or on error; and in the absence of an objection, it may be taken by the court *ex mero motu.*—*Goodman v. Benham,* 16 Ala. 625; *Mc-Maken v. McMaken,* 18 Ala. 576; *Woodward v. Wood,* 19 Ala. 213; *Prout v. Hoge,* 57 Ala. 28; *Dooley v. Villalonga,* 61 Ala. 129; *Lawson v. Ala. Warehouse Co.,* 72 Ala. 289.

BLACKWELL & KEITH, *contra.*—The complainant seems to ignore the fundamental principle which gives equity to a bill of review, to-wit, that the party must be aggrieved by the particular errors assigned, or the bill can not be maintained, whatever may have been the right to insist on such errors on the original hearing, or on writ of error or appeal.—*McCall v. McCurdy,* 69 Ala. 72; 3 Am. & Eng. Decisions in Equity, p. 34, note 5; *Plowman v. Riddle,* 14 Ala. 169.

HARALSON, J.—It is well settled that a bill of review can be maintained only by parties having an interest affected by the decree, and they must be injured by the errors complained of, whatever may have been their right to insist on such errors at the original hearing.—*McCall v. McCurdy,* 69 Ala. 65; *George v. George,* 67 Ala. 192; 3 Am. & Eng. Dec. in Eq., 34, n. 5.

"The equity of a bill of review, for newly discovered testimony, is the fact that it is newly discovered, and that, with the other testimony, it entitles the complainant to a decree different—beneficially different—from that rendered in the case."—*Banks v. Long,* 79 Ala. 319.

16

The only error here complained of, is the failure in the original bill to make the Iron Belt Mercantile Company a party, or that the suit was not prosecuted in the name of that company.

On the allegations and proof in the original bill, it is not denied, nor can it be, that the complainant therein, was entitled to the decree rendered.—*Allgood v. Bank of Piedmont,* 115 Ala. 418. If that suit had been instituted by the Mercantile Company on the notes, alleged to have been its property, instead of in the name of the original complainant, the result must have been the same, so far as complainant in this bill is concerned. It is not denied he owed the notes, the foundation of the original suit, nor is it pretended he had any defense to them, as against the Mercantile Company, other or different from that set up against the original complainant,—The Bank of Piedmont. Moreover, it does not appear, that the Mercantile Company has taken any steps to collect said notes from complainant, or has ever made any complaint at the rendition of said decrees. It may be, that the bank instituted the suit in its own name, at the instance of the Mercantile Co. in order to collect the notes it had transferred as collateral security for its own debt to said company. This it could properly have done, by a retransfer of the notes to it by the Mercantile Company; and it does appear from this bill, that the bank had possession of the notes and introduced them on the trial of its cause against defendant. When paper of this character, though indorsed and transferred, gets back into the hands of the transferor, the law converts his possession into a *prima facie* legal title upon which suit may be prosecuted, regardless of the condition of the paper as to its indorsements.—*Berney v. Steiner,* 108 Ala. 111. This, however, is a question concerning merely the bank and the Mercantile Company, and so far as has been made to appear, it nowise affects this complainant. If the complainant is not entitled to prevail in the end, whether against the bank or the Mercantile Company, there can exist no reason for entertaining his bill for a review and reversal of the original decrees.

[Allgood v. Bank of Piedmont.]

The prayer of this bill is, that "Orator [be] placed in the same situation as he would be, had said bill not been filed against him." This looks to the reversal of the former decree, and the dismissal of the original bill. If this were done, it would enable the complainant, in case a bill were filed against him by the Mercantile Company, to plead the statute of limitations of six years against any personal judgment against him in such suit, and escape, simply, with the loss of the lots subjected to the vendor's lien. The suggestion obtrudes itself, that this may be the real benefit the complainant seeks in filing this bill. If so, it is one a court of equity will not aid him in accomplishing. This would be no injury to him such as would authorize him to maintain a bill of review. He owes the debt to one or the other of these parties, and in good conscience he ought to pay it.

The proper prayer in a case of this kind, is the reversal of the decree, and to retry the cause on the original record, upon the original and new proof.—*McCall v. McCurdy*, 69 Ala. 69. If this were done, it may be, if the original bill was improperly filed in the name of The Bank of Piedmont, alone, that the Mercantile Company on review, might be added as a co-complainant, with no such effect, and with no such consequences as if the suit were dismissed as prayed.—*Plowman v. Riddle*, 14 Ala. 168; *Gunter v. Williams*, 40 Ala. 561, 572.

We fail to see that any substantial injury was done complainant in the original suit, entitling him to maintain this bill. The court below so held, and we approve the decree.

Affirmed.